AMERICAN NATIONAL BANK, v. WILLIAM HOWARD SAUNDERS ET AL.,
Appellants.—50 S. W. (2d) 87.

Division One, May 27, 1932.*

*Silverman & Strop* and *Fred M. Wanger* for appellant.

---

*NOTE: Opinion filed at October Term, 1931, April 2, 1932; motion for rehearing filed; motion overruled at April Term, May 27, 1932.

*Culver, Phillip & Voorhees* and *Brown, Douglas & Brown* for respondents.

458

STURGIS, C.—This is a suit by the American National Bank of St. Joseph, Missouri, trustee of her estate under the will of Dora M. Saunders, deceased, praying for a construction of such will and defining the duties of plaintiff in administering the estate and making distribution of the property. The defendants are the beneficiaries under the will. No question is made as to the pleadings or the procedure. There is no dispute as to the facts.

The petition sets out the will of Dora M. Saunders and its probate and says that a dispute has arisen among the beneficiaries of the will as to its proper interpretation and the respective interests of such beneficiaries in the property held by plaintiff as trustee. The defendants join in asking a construction of the will, but only one of them, the Young Women's Christian Association of St. Joseph, Missouri, ventures to set out what is a proper construction, to-wit: That the title and estates of the defendants William Howard Saunders and Kathleen Inez Thayer in and to the property and assets held and possessed by the plaintiff as trustee under said will are equitable estates for life only, with remainder to this defendant and co-defendant, Sheltering Arms, a Missouri corporation, upon the contingencies provided in Item 5 of the second clause of said will, namely, the death of said defendants William Howard Saunders and Kathleen Inez Thayer without issue.

It stands admitted that the testatrix, a resident of St. Joseph, Missouri, executed her will now in question on February 29, 1916, and died January 24, 1924. At the time of making her will and at her death and its probate, the testatrix had and left surviving her, her husband, Clarence E. Saunders, since deceased, and one son, William Howard Saunders, and a granddaughter, Kathleen Inez Thayer, the only child of a deceased daughter, Cleota Thayer. This son and granddaughter are joined as defendants with the Young Women's

Christian Association of St. Joseph and the Sheltering Arms, two charitable organizations of that city. The plaintiff succeeded the original trustee, the Bartlett Trust Company, as trustee under the will in question and has in its possession and is administering the trust estate of Dora M. Saunders, deceased, except such part as has been administered and distributed, as to which there is no question

The will which plaintiff asks to have construed, omitting some formal and immaterial parts, is as follows:

"First: To my husband, Clarence E. Saunders, I give and devise my property on Church Street, in St. Joseph, Missouri, consisting of house and lot and known as Number 1008 Church Street, absolutely, provided he accepts this will and supports every other provision thereof.

"Second: I give, bequeath and devise all the rest, residue and remainder of my estate to Bartlett Trust Company, of St. Joseph, Missouri, in trust, to hold, control and manage and receive the income and profit thereof, for the following uses:

"1. Pay all taxes lawfully assessed thereon and cost of maintenance and repair.

"2. As soon as may be convenient after the proof of this will and when they can get the best obtainable price, they shall sell my present residence property, known as Number 110 South Fifteenth Street, St. Joseph, Missouri, and pay one-half of the proceeds thereof to my son, William Howard Saunders, and the other half they shall hold in trust for my granddaughter, Kathleen Inez Thayer, until she becomes of age, and shall invest the same safely and accumulate the income thereon, which, as far as may be necessary, may be used for the support and education of said granddaughter, provided her other income is insufficient.

"3. They shall turn over to my said son and granddaughter, the furniture in my said residence, to whom it is hereby given.

"4. All the other income from my estate remaining after the charges thereon, as above mentioned, they shall divide and pay over in equal parts to my husband, Clarence E. Saunders, and to my son, William Howard Saunders, and my granddaughter, Kathleen Inez Thayer, in equal parts, and I direct that said distribution be made monthly, if it can conveniently be done. The share hereby given my said granddaughter is upon the condition that she be left in my care and custody as long as we may both live, and to that end the share of said Kathleen shall be held by said trustees, in trust, for said Kathleen, and such portion as may be necessary for her support, maintenance and education, shall be used, and the surplus shall remain with said trustee, who shall safely invest the same in such income producing securities as in its judgment shall be deemed best. And if the said Kathleen shall remain with me so long as we both

live, then she shall receive one-half of my estate along with my said son, upon the death of my husband; but if she shall not be allowed to remain with me as long as we both live, then her share shall not be paid to her until she reaches the age of thirty years. If she should die before reaching the age of said thirty years, leaving issue, such share shall go to her issue. If she should die before reaching the age aforesaid, without issue, then said share shall go to my said son, William Howard Saunders, for and during his natural life.

"5th. If my son, William Howard Saunders, shall die, without issue, and shall be survived by said Kathleen, all the share herein devised and bequeathed to my said son shall go to said Kathleen for her natural life. If both my son and Kathleen should die without issue, the income of the estate hereby given them shall be held in trust by the said trustee until the death of my said husband, Clarence E. Saunders, when all my estate and all the accumulations above mentioned shall be assigned, transferred and made over to the Sheltering Arms and Young Women's Christian Association, two associations of the City of St. Joseph, Missouri, to be equally divided between them, and to be applied and used for the charitable uses which said associations administer.

"6th. The said trustee shall have power to sell and convey any of the property hereby devised to it, when in its judgment it will be beneficial to my estate to so dispose of the same for the purpose of re-investment."

The omitted portions cover gifts of specific personal property to named devisees.

The husband of testatrix, Clarence E. Saunders, survived her and received the property No. 1008 Church Street, mentioned in the first clause of the will, and also his share, one-third of the income, of the property covered by paragraphs 4 and 5 of the second clause as long as he lived. The property covered by the second paragraph of the second clause of the will, the Fifteenth Street property, was sold by the trustee and one-half of the proceeds was paid over to William Howard Saunders, and the other half of such proceeds is being held and administered by the trustee in trust for Kathleen Inez Thayer, "until she becomes of age." That property is hers absolutely except it is held in trust by plaintiff during her minority and is subject to the law of descent and distribution. Such we understand to be the trial court's decree. As to this, the decree says: "The plaintiff, as such trustee, is in possession and control of the trust estate which now consists, first, of one-half the proceeds of the sale of the real estate described in paragraph 2 of item second of said will and accumulations of the income thereof, held for the exclusive benefit of Kathleen Inez Thayer until she becomes twenty-one years of age."

461

In addition to this fund, the plaintiff, as trustee under the will in question, is in possession of a double store building, five stories high, on Felix Street, St. Joseph, Missouri, worth something like $100,000. It is occupied by the Hartman Furniture Company, which is paying $7,500 per year gross rent. A double tenement house and a single house on Eleventh Street, worth about $12,000, or $15,000 are included in this trust property. This real estate was owned by testatrix at her death and then passed into the hands of the trustee. At the time of the trial defendant William Howard Saunders was forty-five years of age, married, but without issue. The defendant Kathleen Inez Thayer was then seventeen years of age, under guardianship, and unmarried. She remained with testatrix, her grandmother, as long as the latter lived and complied with the provisions of the will in that respect.

The decree of the court construing this will, after reciting the facts as above stated, reads:

"Six. The court finds the testatrix provided and intended by her said last will and testament, and it is therefore ordered, adjudged and decreed by the court that said last will be and the same is hereby construed to provide and mean that:

"By the second section the testatrix devised and bequeathed all of her estate (excepting the property known as No. 1008 Church Street in St. Joseph, Missouri, devised to her husband in the first paragraph of said will) to Bartlett Trust Company and its successors, in trust, to hold, control, manage and receive the income and profits thereof for the uses mentioned in Sections 1, 2, 3, 4, 5, and 6 of said second paragraph; that by Section four (4) of said second paragraph the testatrix provided that the defendants William Howard Saunders and Kathleen Inez Thayer, from and after the death of Clarence E. Saunders, are each entitled to receive from the trustee one-half of the net income of the trust estate (excepting the property, and the income thereof, mentioned and referred to in sections two (2) and three (3) of said second paragraph) as long as each respectively lives; that upon the death of Kathleen Inez Thayer before reaching thirty (30) years of age, leaving issue, her share (of the income) should go to her issue (as it will if she die with issue at any time); that upon the death of said Kathleen Inez Thayer without issue surviving her, before reaching the age of thirty (30) years, her share of such income should go to William Howard Saunders for and during his natural life; that upon the death of William Howard Saunders, without issue, leaving the said Kathleen Inez Thayer surviving him, the share of income of William Howard Saunders should go to Kathleen Inez Thayer for and during her natural life; but should Kathleen Inez Thayer and William Howard Saunders both die without issue, that is, no descending blood of the testatrix remain on the death of both

said Kathleen Inez Thayer and William Howard Saunders, then, and in that event only, the trustee shall transfer and pay in equal parts to the Sheltering Arms and Young Women's Christian Association the absolute title to the said trust estate, and all accumulations thereof, to be used for their respective charitable purposes. Let the costs be taxed against the plaintiff to be paid out of the trust estate."

The defendants William Howard Saunders and Kathleen Inez Thayer have duly appealed from this judgment. The assignments of error amount to little more than that the court erred in its construction of the will in adjudging that said beneficiaries (appellants) have only a life estate in the trust estate created by the will, and in adjudging that defendants Sheltering Arms and Young Women's Christian Association will be entitled to the trust estate, with accumulations, in the event of the death of both William Howard Saunders and Kathleen Inez Thayer without issue.

Under the head of "Points and Authorities" the appellants state their construction of the will to be that the will gives the *income* to testatrix' husband, son and granddaughter in equal shares during the husband's life; gives the *principal* of the estate to testatrix' son and granddaughter in equal parts upon the husband's death; the share of the granddaughter is to be held in trust until she reaches thirty years of age, in the event she does not reside with testatrix until testatrix' death, and in case of the continuance of the trust as to said granddaughter, gives her share to her issue, if she dies before reaching the age of thirty years, leaving issue; and if leaving no issue, then to testatrix' son for life; further, that if testatrix' son dies before her (testatrix) death, leaving no issue, then his share to testatrix' granddaughter during her life; and if both the son and granddaughter die without issue before testatrix' death, then to the named charities.

The defendant charity associations accept the decision of the court as correct or at least satisfactory and ask its affirmance.

There are no controverted facts in the case and we may say there are no controverted propositions of law. A reading of the briefs disclose that the respondents concede the correctness of the propositions of law stated by appellants under their "Points and Authorities." In their reply brief the appellants frankly say: "No controversy exists between counsel as to the rules of law applicable to this case. We all agree that the intention of the testator is to govern as that intention can be ascertained from the language of the will; that the court cannot write a will for testator; that an estate granted in plain language is not cut down or limited by ambiguous or less equally plain language in a subsequent clause; or that where a devise over is provided for in the event of the death of the devisee without issue, and the will does not disclose a contrary meaning, the event referred

to is the death of the devisee prior to the death of testator.'' To this may be added that in construing a will, that is, in ascertaining the intent of the testator, the whole will should be read together and effect given, if·possible, to every provision. All of these propositions respondents concede in their brief, but upon the application of the rules as stated to the language of the will under consideration, appellants and respondents differ. Appellants contend that nothing in the·context of the will indicates that the time of death of either beneficiary is other than before the death of testatrix, while re-· spondents contend that death without issue, whenever occurring, was intended by testatrix to control the disposition of the property.

In this, as in many cases involving the construction of wills, the difficulty is in ascertaining the meaning of the language used by the testator in the light of the facts as they existed in his mind. It is but common knowledge that testators do not always know and have never considered what they desire to have done with their property in every contingency that might arise, and even when aided by an expert or one learned in the law of wills, overlook contingencies which with more or less probability will arise either before or after the will takes effect. The result is that every will calling for a construction must to some extent stand by itself and its construction be governed by its own wording. It is especially not uncommon in a will creating limited estates and remainders over that it is left incomplete and fails to provide for contingencies that may and do arise.

In the present case we are not called upon to make a construction of this will to meet every contingency that might have arisen or that yet may arise. We are called upon to meet the present conditions and construe the will with reference to such conditions. Many of the possible contingencies which might have arisen are now past and may be eliminated. Some of the provisions of this rather complex will need not now be considered except so far as same may throw light on the meaning and intent of such provisions as are vital under existing conditions.

The facts as they now exist are that when the testatrix died and the will became effective, the three primary and natural objects of her bounty, to-wit, her son, her granddaughter, and her husband, were yet living and the contingency of any one of them dying before the testatrix did not happen. The trustee readily performed the duties imposed upon it by all the primary clauses of the will except the second with its six sub-paragraphs. No controversy has arisen as to any of these sub-paragraphs except the ones numbered 4 and 5. This clause second starts out by vesting the full title to such of testatrix' property as was not specifically devised, all of it being improved and productive real estate, in a trustee in trust for uses which testatrix attempted at least to specify. The full legal title of this property is vested in the trustee with power to hold, control and

manage, and receive the income and profits thereof. This is followed by a direction to the trustee to "pay all taxes assessed thereon and the cost of maintenance and repairs." The further power is then given by sub-paragraph 6 to the trustee to sell and convey this real estate if, in the judgment of the trustee, it will be of benefit to the estate to do so, but only for re-investment so as to keep the property intact in the trustee. This creates a highly active trust.

Having vested the full legal title in the trustee, with the power and duty to "receive the income and profit thereof," the testatrix by paragraph 4 proceeds to dispose of "all the other income from my estate remaining after the charges thereon" (the payment of taxes, maintenance and repairs), by directing that the trustee "shall divide and pay over in equal parts" to the husband, the son, and the granddaughter, naming them, and repeating "in equal parts." This is to be done monthly, so far as practical. It will be noticed that the will assumes that all three of these beneficiaries will be living at testatrix' death, which actually happened, and in this respect at least no provision is made for further disposition over in case the death of either occurs before testatrix' death, either with or without issue. That, however, is of no present interest. The testatrix next remembers that the granddaughter is quite young and living with her and desires this condition to continue, and so provides that "the share (of the income) hereby given my granddaughter (to be paid over monthly) is upon the condition that she be left in my care and custody as long as we may both live," and in that event the trusteeship shall continue, and instead of paying over her share of the income monthly, the trustee shall use only such part of same as may be necessary for her support, maintenance and education, "and the surplus (of the income) shall remain with the trustee, who shall safely invest same" in productive securities. That this clause deals with the net income only is apparent and not controverted. Then, remembering that the husband and father might die during this period, testatrix further provided: "And if the said Kathleen shall remain with me so long as we both live, then she shall receive *one-half* (the income) *of my estate* along with my said son upon the death of my husband." The words in parenthesis are supplied by the context. This is the present condition. The granddaughter, Kathleen, continued to and was living with testatrix at testatrix' death. The husband died some four and one-half years after testatrix died and the will took effect. The son and granddaughter have survived both the testatrix and the father and are living and without issue.

On this state of facts, the contention of the son and granddaughter is that this last quoted clause, by its terms, changes their whole relationship to this trust estate and instead of having a limited or con-

ditional right to receive the income thereof, the *corpus* of the property vested in them absolutely, and that the trustee should deal with them accordingly; that all possibility of the named charities receiving this property was thereby cut off. As to Kathleen's share of the property, there is certainly nothing in the will so far considered calling for the application of the rule relied on by appellant, that in a devise of real estate, a gift over in the event of the *death* of the *devisee* without issue means, unless the contrary appears, the death of the devisee during the life of the testator and not afterwards. There is no such provision in this will applicable to her interest. The only provision of that kind is that after the death of testatrix' *husband*, Kathleen shall receive one-half of the estate along with the son. It is a mere enlargement of her share from a third to one-half on the dropping out of one beneficiary. That clearly means on the death of the husband, whenever that occurs, and most surely after the death of the testatrix. It is true that the will has the further provision that if Kathleen be not allowed to remain with testatrix as long as both live, a thing which never happened, "then her share (of the income) shall *not be paid* to her until she reaches the age of thirty years"—an event not yet reached; and if Kathleen should die before reaching the age of thirty, "leaving issue, such share (of the income) shall go to her issue," and if dying before thirty, without issue, the said share shall go to testatrix' son "for and during his natural life." There is nothing here to indicate that Kathleen, on her grandfather's death, took an absolute estate in one-half of the trust property instead of a one-half of the income thereof, a lesser estate. The clear meaning is that as the three beneficiaries had been receiving the net income in equal parts, then on the father's death this income would be paid to the two of them in equal parts. It is the *quantum* only of the estate that is changed and not its quality. This clause deals with the disposition of the income with the property in the hands of the trustee The husband being dead, the other two beneficiaries, the granddaughter, Kathleen, and the son, William Howard, are each receiving and entitled to receive one-half of such net income. We need not stop to speculate on what would be the condition had either or both these beneficiaries died before the husband's death—a condition which we think is covered by the next sub-paragraph 5.

Taking this sub-paragraph 4 as a whole, we find that it vests the title, possession and control of the property covered by it in a trustee to receive and handle the income, without any limitation as to time when the trusteeship shall end and the property be turned over to a beneficiary as full owner. The handling and disposition of the income, with particular reference to the share of the granddaughter, is then dealt with. The primary disposition of the net

income was on the basis that the trustee pay over at monthly intervals, as far as practical, the net income, in equal shares, to or for each of the three named beneficiaries. This is to continue indefinitely, with certain changes as to the proportions going to each as would be occasioned by the death of one or more of these beneficiaries, and with limitations as to times of payment designated by testatrix. Nowhere and in no contingency designated in this clause is the trust to cease and the property to go to a beneficiary as full and unconditional owner, legal or equitable. The provision of the will limiting the payment to or for Kathleen of her share of the income to such amount as was necessary for her support and education and withholding the payment to her of her share of the income not so expended till she reached thirty years of age, unless Kathleen remained with testatrix as long as both lived, was doubtless inserted to conserve her share of such income. The provision that if Kathleen remained with testatrix as long as both lived, she shall receive one-half of the estate along with the son on the death of the husband, does not imply the converse, that unless Kathleen so lived with testatrix as long as both lived, she should not receive one-half or any part of the estate on the husband's death, but only that her share would be increased to that amount. It plainly means that on the husband's death, his interest or right to receive one-third of the net income shall cease without remainder over and that such income shall be paid to the other two beneficiaries equally.

That this clause deals with the income of the trust property only is also indicated by the second clause of the will giving to these two beneficiaries, the granddaughter and the son, in equal proportions, the proceeds of the property on Fifteenth Street, and directing that the trustee shall hold and invest the share of Kathleen during her minority, with power to use part of such income for her support and education "provided her *other income* is insufficient." It is also significant that by the last sentence of sub-paragraph 4 in providing for the handling of the share of Kathleen of the income of this trust estate during the period preceding her reaching the age of thirty years, it provides that if she die without issue during that period, her share, whether of income or *corpus*, shall go to the son, William Howard, during his natural life.

Looking now to sub-paragraph 5 of the second clause of the will, we must keep in mind that by paragraph 4 the testatrix has created the trust estate with full legal title in the trustee to receive the income and profits therefrom, pay all expenses of maintaining the trust property, and pay over the net income in equal proportions to the three named beneficiaries, and to be increased to one-half each to the granddaughter and the son on the death of the husband, without any limitations so far as to when such active trusteeship

shall cease or the *corpus* of the property be turned over to a benefic-iary as full owner. This paragraph 5 then provides that if the son, William, shall die without issue and Kathleen be yet living, all his share (of the income herein bequeathed to such son) shall go to Kathleen *for her natural life*. This provision cannot mean that only in case the son die without issue before the testitrix will his share of the income go to Kathleen, if living, for her natural life, with remainder over to the charities mentioned, for if so limited, the son could never, at his death or the husband's death, be a recipient of one-third of the income of the trust estate, since he would be dead at the time the trust estate came into existence; and such construction would be contrary to appellants' theory that on the death of the father, which was long after the testatrix' death, this trust estate then became vested in the two surviving beneficiaries. That the testatrix intended that these beneficiaries should never have more than the right to receive the income of the trust estate is shown by the next sentence of this 5th paragraph providing that, "If both my son and said Kathleen shall die without issue, the *income of the estate hereby given them* shall be held in trust by the said trustees until the death of my said husband, Clarence E. Saunders, when all my estate and all the accumulations above men-tioned shall be assigned, transferred and made over to the Shelter-ing Arms and Young Women's Christian Association," to be equally divided and used for charity. This clause recognizes that the beneficiaries named are given only "the income of the estate" and that they might die before the husband's death, in which case the trust would continue and the income of the estate be held by the trustee till the husband's death, and then if both such beneficiaries shall have died without issue, the *corpus* of the trust estate and the accumulations shall go absolutely to the two named charities. This is the first and only final bequest over to an absolute owner of the *corpus* of the trust property and its accumulations of net income not paid out to the three primary beneficiaries.

It is nowhere specifically provided that if one or both beneficiaries, the son, William, or granddaughter, Kathleen, should die leaving issue, that the *corpus* of the estate shall go to such issue, though this is doubtless plainly implied and is not controverted. If only one of these two beneficiaries yet die leaving issue and the other without issue, how and in what proportions such *corpus* shall vest need not now be determined since said charities only claim and are awarded the trust property after and in case both said beneficiaries die with-out issue. The decree settles the controversies which are now exist-ing.

Finding no error affecting appellants' rights, the judgment and decree of the trial court is affirmed. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.