Jonathan Leigh **PHILLIPS**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

**John Demarco Johnson,** Appellant,

v.

**Commonwealth of Kentucky,** Appellee.

Nos. 1997–SC–0519–MR, 1997–SC–0536–MR.

Supreme Court of Kentucky.

Feb. 24, 2000.

Rehearing Denied June 15, 2000.

John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant Jonathan Leigh Phillips.

A.B. Chandler, III, Attorney General, Frankfort, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee Commonwealth of Kentucky.

V. Gene Lewter, Fayette County Legal Aid, Inc., Lexington, for appellant John DeMarco Johnson.

A.B. Chandler, III, Attorney General, Frankfort, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee Commonwealth of Kentucky.

COOPER, Justice.

On Thanksgiving Day, November 28, 1996, seventeen-year-old Natasha Yates was shot and killed during an exchange of gunfire between Appellants Jonathan Leigh Phillips and John DeMarco Johnson. Following a joint trial in the Fayette Circuit Court, both Phillips and Johnson were convicted of wanton murder, KRS 507.020(1)(b), and each was sentenced to twenty-five years in prison. Phillips was also convicted of tampering with physical evidence, KRS 524.100, and received a concurrent sentence of five years in prison for that conviction. Both appeal to this Court as a matter of right. Ky. Const. § 110(2)(b).

## I. FACTS.

On the day in question, Phillips, Yates and Terry Burchett were socializing with other friends at the residence of Burchett's sister in Lexington, Kentucky. Phillips admitted that he had smoked some crack cocaine either shortly before or after arriving at that residence, and that all three had smoked some marijuana while at the residence. A decision was made to purchase some more crack cocaine. To that end, Phillips, Yates and Burchett proceeded in an automobile which belonged to Yates's mother to the Charlotte Court neighborhood in Lexington. At Phillips's direction, Burchett brought with him a .38 caliber revolver which had been loaned to him several weeks prior by David McCall, a resident of Paintsville, Kentucky. Phillips drove the automobile, Burchett sat in the front passenger seat, and Yates sat on the console between Phillips and Burchett. Burchett placed the handgun under the front passenger seat.

Upon arriving at Charlotte Court, Phillips got out of the vehicle and purchased a thirty-dollar "rock" of crack cocaine from a street dealer. He placed the cocaine in his shirt pocket and reentered the vehicle, whereupon Johnson, who was standing nearby and who was not involved in the

cocaine transaction, called out to Phillips in an apparently offensive manner. Phillips responded in kind and Johnson threw a bottle which sailed over the top of the Yates vehicle. According to Phillips, he then saw Johnson reach under his shirt as if to draw a weapon. Phillips told Burchett to give him the .38 revolver. Both Phillips and Burchett testified that as Burchett was passing the .38 revolver to Phillips, Johnson fired two shots at their vehicle, one of which passed through the glass of the driver's side window; that Phillips fired two shots back at Johnson, who ran away; and that Phillips then drove Yates's vehicle away from the scene. Johnson testified that after he threw the bottle, shots were fired at him from the Yates vehicle; and that he first sought cover, then fired two shots back at the vehicle as it was leaving the scene.

Upon leaving Charlotte Court, Phillips and Burchett discovered that Yates had been shot. Phillips suggested that he and Burchett abandon Yates and the car, but Burchett insisted that they take Yates to a hospital. When they arrived at the parking lot of Columbia Hospital, Phillips got out of the car and told Burchett to give him the revolver and not to mention his name or that Yates had been shot during a drug deal. Phillips then walked away in possession of both the revolver and the $30.00 rock of crack cocaine. Burchett drove Yates to the hospital's emergency room. After leaving the vehicle, Phillips removed the crack cocaine from his shirt pocket and smoked it. He then made several telephone calls to Burchett's sister's residence in an unsuccessful attempt to induce someone to meet him and take him home. During these conversations, Phillips claimed that Burchett had taken Yates to the hospital because Yates had been in an "accident," but that she would be all right. Yates subsequently died of a gunshot wound to the head.

On November 29, 1996, the day after the shooting, Phillips drove to Paintsville and delivered the .38 revolver to its owner, David McCall. McCall testified that the weapon was fully loaded with live ammunition when it was returned to him.

## II. ISSUES PERTAINING TO PHILLIPS.

Phillips asserts (1) the evidence was insufficient to convict him of wanton murder; (2) he was entitled to an instruction on self-protection; (3) the evidence was insufficient to convict him of tampering with physical evidence; (4) he should have been tried separately from Johnson; and (5) evidence of his desire to abandon Yates and that he smoked the crack cocaine was evidence of "other bad acts" which should have been suppressed pursuant to KRE 404(b).

### 1. Wanton murder.

It is undisputed that the bullet that killed Yates was fired by Johnson, not Phillips. Thus, Phillips claims that even though the evidence might have supported his conviction of wanton endangerment or attempted murder of Johnson (offenses for which he was not indicted), it did not support his conviction of the murder of Yates. We agree that Phillips and Johnson were not acting in concert with each other so as to create accomplice liability under KRS 502.020. Rather, the issue is one of causation.

Under the common law, proof of causation sufficient to convict of criminal homicide required either a direct act of force by the defendant against the victim, or an indirect act by the defendant, the probable and natural consequence of which was the death of the victim. J. Roberson, *Kentucky Criminal Law and Procedure* § 278 (2d ed. Anderson 1927); *e.g., Graves v. Commonwealth,* Ky., 273 S.W.2d 380 (1954); *Hubbard v. Commonwealth,* 304 Ky. 818, 202 S.W.2d 634 (1947). This principle did not always require that death result from the direct application of physical force by the defendant against the victim. Roberson, *supra,* §§ 277, 278. Thus, in *Sanders v. Commonwealth,* 244

Ky. 77, 50 S.W.2d 37 (1932), a conviction of manslaughter was upheld where the defendant threatened his wife with a deadly weapon while they were in a moving vehicle and she jumped from the vehicle to her death. And in *Cassell v. Commonwealth,* 248 Ky. 579, 59 S.W.2d 544 (1933), where the defendant was charged with poisoning his wife, it was held that the criminality of the act was the same whether he administered the poison, himself, or put it in her way to take innocently. *Id.,* 59 S.W.2d at 547. However, no cases are found where a defendant was held criminally liable because his act provoked another to inadvertently kill an innocent third party. *See generally* Roberson, *supra,* § 395, at 525.

The facts of this case implicate three provisions of the penal code. A person is guilty of wanton murder if, "under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." KRS 507.020(1)(b). "Wantonly" is defined as awareness and conscious disregard of a substantial and unjustifiable risk that particular conduct would cause a particular result. The test is an objective one. "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." KRS 501.020(3). Causal relationships are addressed in KRS 501.060, which provides in pertinent part as follows:

(1) Conduct is the cause of a result when it is an antecedent without which the result in question would not have occurred.

(2) When intentionally causing a particular result is an element of an offense, the element is not established if the actual result is not within the intention or the contemplation of the actor unless:

   (a) The actual result differs from that intended or contemplated, as the case may be, only in the respect that a different person or different property is injured or affected....

. . . .

(3) When wantonly ... causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware ... unless:

   (a) The actual result differs from the probable result only in the respect that a different person ... is injured or affected....

. . . .

(4) The question of whether an actor knew or should have known the result he caused was rendered substantially more probable by his conduct is an issue of fact.

■ This statute was adopted from section 2.03 of the Model Penal Code. Subsection (2)(a) extends the common law concept of transferred intent, which is codified with respect to intentional murder in KRS 507.020(1)(a), to other intentional crimes. Thus under either KRS 507.020(1)(a) or KRS 501.060(2)(a), the defendant is guilty of intentional murder if he intended to kill one person (V–1), but instead killed another (V–2). R. Lawson and W. Fortune, *Kentucky Criminal Law* § 2–4(e)(1) (LEXIS 1998); *e.g., Smith v. Commonwealth,* Ky., 734 S.W.2d 437 (1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 778 (1988). Similarly, KRS 501.060(3)(a) creates the concept of transferred wantonness, a theory of criminal liability unfamiliar to our common law. Under KRS 501.060(3)(a), a defendant is guilty of wanton murder if, under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to one person (V–1) and thereby causes the death of another (V–2).

■ Pennsylvania has a statute, 18 Pa. Cons.Stat. § 303, which is identical to KRS 501.060 in all relevant respects. In *Com-*

*monwealth v. Gaynor,* 538 Pa. 258, 648 A.2d 295 (1994), Gaynor and (coincidentally) Johnson were arguing inside a store and began shooting at each other. Neither was injured, but shots fired by Johnson killed one innocent bystander and wounded two others. Concluding that he had participated in the shoot-out with the intent to kill Johnson, the Supreme Court of Pennsylvania upheld Gaynor's conviction of the *intentional* murder of the innocent bystander under the transferred intent theory embodied in 18 Pa.Cons.Stat. § 303(b)(1), which is the equivalent of KRS 501.060(2)(a). That result is consistent with our holding in *Smith v. Commonwealth, supra.* Similarly, in the case *sub judice,* if Phillips was acting with aggravated wantonness with respect to Johnson and Yates was resultantly killed, Phillips is guilty under KRS 501.060(3)(a) of the *wanton* murder of Yates.

■ Assuming the jury believed, as they obviously did, that Phillips fired first, they also could have found Phillips guilty under KRS 507.020(1)(b) on the basis that by shooting at Johnson, Phillips was acting with aggravated wantonness with respect to Yates. Although Phillips testified that he did not consider purchasing crack cocaine from a street dealer at Charlotte Court to be a dangerous endeavor, the jury was entitled to believe otherwise, especially since Phillips had directed Burchett to bring a firearm along on the trip. And although Phillips may have hoped he was shooting at an unarmed man, a jury could reasonably conclude that a person who deemed it necessary to arm himself before going to that neighborhood would have been aware of the risk that others in the neighborhood, *e.g.,* Johnson, would also be armed and, if fired upon, would return fire. Phillips shot at Johnson from inside the vehicle while seated directly beside Yates. A jury could further reasonably conclude that a person in Phillips's position would have been aware of the risk that if Johnson returned fire and did not hit Phillips, the shot might very well hit the person seated next to him in the car. Thus, even without KRS 501.060(3)(a), Phillips would be guilty of wanton murder, because a jury could reasonably believe that "under circumstances manifesting extreme indifference to [Yates's] life, he wantonly engage[d] in conduct which create[d] a grave risk of death to [Yates] and thereby cause[d] the death of [Yates]." KRS 507.020(1)(b).

*2. Self-protection.*

■ Phillips claims he was entitled to an instruction on self-protection on his theory that Johnson shot first. No doubt, if Phillips had been charged with the wanton endangerment or attempted murder of Johnson, he would have been entitled to an instruction on self-protection with respect to those offenses. And under the common law, he would have been entitled to the instruction even though the victim was an innocent bystander.

> It long has been the settled rule that, if at the time appellant shot the deceased he was shooting at Terry, under circumstances that would have made the shooting and killing of Terry excusable on the ground of self-defense, and deceased was accidentally and unintentionally shot and killed by a bullet intended for Terry, appellant was entitled to an acquittal.

*Minix v. Commonwealth,* 266 Ky. 801, 100 S.W.2d 825, 826 (1937). The penal code changed the law in that respect. KRS 503.120(2) provides as follows:

> When the defendant is justified under KRS 503.050 to 503.110 in using force upon or toward the person of another, but he wantonly or recklessly injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for an offense involving wantonness or recklessness toward innocent persons.

■ As the Court of Appeals held in *Kohlheim v. Commonwealth,* Ky.App., 618 S.W.2d 591 (1981), this statute precludes an instruction on self-protection if the de-

fendant's wanton or reckless use of deadly force caused the death of an innocent person. Thus, Phillips was not entitled to an instruction on self-protection as a defense to the wanton murder of Yates.

### 3. Tampering with physical evidence.

■ The indictment for this offense was predicated on Phillips's disposal of the crack cocaine by ingestion, his apparent removal and disposal of two spent cartridges from the .38 revolver, and his return of the revolver to its owner in Paintsville. Phillips asserts there was no proof that any of those acts were motivated by a belief that the cocaine, the spent cartridges, or the revolver constituted physical evidence which might be used in an official proceeding. KRS 524.100. To summarize the relevant evidence: Phillips first suggested to Burchett that they abandon Yates and her vehicle (inferentially for the purpose of concealing their participation in the shooting); he took the cocaine and the .38 revolver with him when he deserted Burchett and Yates at the Columbia Hospital parking lot and told Burchett not to mention his name or that Yates had been shot in a drug deal; he disposed of the cocaine by ingestion even before attempting to find a ride home; he told Yates's friends that Yates had been hurt in an "accident;" he personally delivered the .38 revolver to McCall in Paintsville the next day, instead of simply returning it to Burchett, who was still in Lexington; and when he delivered the revolver to McCall, it was fully loaded, despite the fact that Phillips admits that he fired two rounds at Johnson.

In *Burdell v. Commonwealth,* Ky., 990 S.W.2d 628, 632–33 (1999), we held that one who destroys, mutilates, conceals, removes or alters physical evidence contemporaneously with the commission of his crime can be convicted of tampering with physical evidence even though no official proceeding was pending or had been instituted when the tampering occurred. "The compelling logic of these decisions is that one who has committed a criminal act and then conceals or removes the evidence of his crime does so in contemplation that the evidence would be used in an official proceeding which might be instituted against him." *Id.* at 633. Phillips's actions immediately following and within twenty-four hours of the shooting clearly inferred guilty knowledge and an intent to conceal the circumstances of Yates's death and his involvement therein. This evidence was sufficient to support the jury's conclusion that the actions he took with respect to the evidence connecting him to Yates's death constituted the offense of tampering with physical evidence. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991).

### 4. Denial of separate trials.

■ Phillips's claim of entitlement to a separate trial is premised upon the fact that Johnson accused him of being the first to shoot, and his perception that he was thus being prosecuted by both the Commonwealth's attorney and Johnson's attorney. Suffice it to say that:

> [N]either antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice.... That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than against a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together.

*Ware v. Commonwealth,* Ky., 537 S.W.2d 174, 177 (1976).

■ As in *Burdell v. Commonwealth, supra,* this was not a case in which evidence was admitted which was competent as to one defendant, but incompetent as to the other, *e.g., Cosby v. Commonwealth,* Ky., 776 S.W.2d 367 (1989), *cert. denied,* 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990), *overruled on other grounds, St. Clair v. Roark,* 10 S.W.3d 482 (Ky., 1999); or one where Appellant's co-defendant was

charged as an habitual offender, but Appellant was not, *e.g.*, *Hardin v. Commonwealth*, Ky., 437 S.W.2d 931 (1968). There is a legitimate preference for joint trials, *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992), *cert. denied*, 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993), *overruled on other grounds, St. Clair v. Roark, supra*, and the trial judge has broad discretion in determining whether to sever joint indictments. The trial judge's decision in that regard will not be overturned absent a showing of undue prejudice to the defendant and a clear abuse of discretion, neither of which occurred in this case. *Burdell v. Commonwealth, supra*, at 634; *Dishman v. Commonwealth*, Ky., 906 S.W.2d 335 (1995).

### 5. Other bad acts.

■ KRE 404(b) precludes evidence of other bad acts only if the evidence is offered to prove the character of a person in order to show that he acted in conformity therewith. Such evidence is admissible if it is relevant for some other legitimate purpose. KRE 404(b)(1); *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 29 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999). In this case, the ingestion by Phillips of the crack cocaine was an integral part of the offense of tampering with physical evidence. Likewise, evidence that Phillips wanted to abandon Yates and her automobile was relevant to prove Phillips's desire to conceal his involvement in the shooting of Yates, thus his motive for tampering with the cocaine and the .38 revolver.

### III. ISSUES PERTAINING TO JOHNSON.

Johnson asserts (1) the jury should not have been instructed on wanton murder, because his act of shooting at Phillips was an intentional act of self-defense; and (2) the trial judge should have declared a mistrial when Phillips mentioned the word "polygraph."

### 1. Wanton murder.

With respect to Johnson, the trial judge instructed the jury on alternative theories of transferred intent and wanton murder. The instruction on transferred intent was qualified by the privilege to act in self-protection. The instruction on wanton murder was not so qualified. Thus, the instructions conformed to KRS 503.120(2), quoted *supra*, which precludes self-protection as a defense if the defendant wantonly or recklessly injured an innocent bystander. Furthermore, *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518 (1994), which had held that a claim of self-defense precludes an instruction on wanton murder was overruled on that specific point in *Elliott v. Commonwealth*, Ky., 976 S.W.2d 416, 422 (1998).

### 2. "Polygraph."

■ Phillips had initially denied to the police that he had fired any shots at Johnson. During his direct examination at trial, he testified that he decided to tell the truth after he was asked to submit to a polygraph examination. Johnson asserts that this reference to a polygraph examination automatically entitled him to a mistrial. We disagree. In *Tamme v. Commonwealth, supra*, at 33, we held that mere utterance of the word "polygraph" is not grounds for reversal. As in *Tamme* and in *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519, 523 (1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), there was no indication that Phillips underwent a polygraph examination, much less that he passed it. "There must arise a clear inference that there was a result and that the result was favorable, or some other manner in which the inference could be deemed prejudicial." *Tamme, supra*, at 33 (quoting *McQueen, supra*, at 523). Johnson's reliance on *Morgan v. Commonwealth*, Ky., 809 S.W.2d 704 (1991) is misplaced. In *Morgan*, the witness was a polygraph examiner, who was identified to the jury as a police officer possessing "special interrogation skills," and his testimony created a clear inference that the defendant had taken and failed a polygraph

examination. The prejudice associated with evidence that the defendant or a witness underwent a polygraph examination is the resulting inference that the polygraph examination either confirmed or belied the truthfulness of the witness's testimony at trial. Absent evidence that the witness underwent a polygraph examination, no such inference arises.

Accordingly, the judgments of conviction and the sentences imposed by the Fayette Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., not sitting.