RENDERED: FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0164-MR

LAMONTE AKIO WILLIAMS        APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.       HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 16-CR-01162-002

COMMONWEALTH OF KENTUCKY        APPELLEE

AND       NO. 2019-CA-0227-MR

D'MARKEO CHAVEZ TAYLOR        APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.       HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 16-CR-01162-003

COMMONWEALTH OF KENTUCKY        APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: GOODWINE, KRAMER, AND MAZE, JUDGES.

KRAMER, JUDGE: Lamonte Akio Williams and D'Markeo Chavez Taylor appeal their convictions for wanton endangerment, first degree, in the Fayette Circuit Court. This Court held this matter in abeyance pending resolution of two companion cases in the Kentucky Supreme Court, 2019-SC-0066-MR and 2019-SC-0138-TG.[1] Those cases are now final. After careful review of this matter and the decision by the Kentucky Supreme Court in the companion cases, we affirm.

On the night of October 16, 2016, at approximately 3:50 a.m., fifteen-year-old Trinity Gay was tragically shot through the chest while socializing with friends in the parking lot of the Cook Out restaurant in Lexington, Kentucky. She died from her wound shortly thereafter.

Taylor and his friend, Raekwon Berry, were at the Cook Out earlier in the evening of October 16, 2016. Taylor called his father, Chazerae Taylor[2] and told him that he and Berry had been robbed of a gun and cash while there.

---

[1] *See Taylor v. Commonwealth*, __S.W.3d__, Nos. 2019-SC-0066-MR, 2019-SC-0138-TG, 2020 WL 6390211 (Ky. Oct. 29, 2020) (those cases were finalized on February 18, 2021, and designated to be published).

[2] Both counsel and witnesses referred to Chazerae Taylor as "Chaz" throughout the trial. We use Chazerae to be in conformity with the name used in the companion Supreme Court cases.

Chazerae agreed to return to the Cook Out with Taylor and Berry to look for the individual who allegedly robbed them. Taylor, who was driving, picked up Chazerae and headed back to the Cook Out. On the way, they picked up Williams and Tovon McFarland, who were told of the robbery on the way to the restaurant. It is undisputed that Taylor, Chazerae, and Williams had guns in their possession when they arrived.

The parking lot of the Cook Out was crowded that night, which was described as not being unusual because the parking lot was known as a popular hang-out area. The mood there that evening has been described as "tense." Williams eventually told police that when they arrived at the Cook Out, people in the parking lot were "mean mugging" him, *i.e.*, reaching into their pockets as if to signal they were grabbing a gun. Video surveillance shows that upon Chazerae's exiting the vehicle, he fired shots into the air while standing directly outside of the Cook Out. At this point, the record shows that shots were then fired from multiple people both in and around the Cook Out parking lot.[3] Williams, who was standing next to Chazerae in the surveillance video, fired his gun into the air at least twice.

---

[3] Three cartridge cases collected from the scene were fired from Taylor's gun. Numerous spent cartridge casings were recovered from the scene that were fired from guns that were never identified. Multiple witnesses testified seeing individuals firing guns and hearing gunshots, but no witness could affirmatively identify any of the shooters. In their subsequent interviews with law enforcement, Williams, Taylor, Chazerae, and D'Vonta Middlebrooks admitted to firing guns in the Cook Out parking lot that evening. Law enforcement recovered only the guns used by Taylor and Williams.

Taylor, who was at the front side of the Cook Out, also fired his gun into the air. Taylor also admitted to firing shots from his vehicle as the group was leaving.[4] D'Vonta Middlebrooks, who was also in the parking lot that night, fired shots from a mulched area between the Cook Out and the neighboring Waffle House. Tragically, in the ensuing and needless chaos, a bullet from a .45 caliber gun struck and killed Trinity Gay. Although the shooter has never been identified, four individuals were charged in response to events that night: Williams, Taylor, Middlebrooks, and Chazerae.

In a joint trial, a jury convicted Williams on five counts of wanton endangerment, first degree, and recommended a sentence of one year on each count, to run consecutively, for a total of one year's incarceration. The circuit court sentenced Williams accordingly but probated his sentence for five years. The same jury convicted Taylor of one count of wanton endangerment, first degree, and recommended a sentence of fifteen months' incarceration.[5] The circuit court

---

[4] When police arrived at Taylor's house to question him, his blue Ford Fusion was covered in bullet holes and had a smashed rear window.

[5] We note that, although Taylor admitted to also firing the gun from his vehicle when fleeing the Cook Out, he was charged with only one count of wanton endangerment, first degree, and the jury instructions stated, in relevant part, "[t]hat in this county on or about October 16, 2016, and before the finding of the indictment herein, [Taylor] fired multiple shots from a handgun in the parking lot of the Cook Out restaurant[.]" As pointed out in Taylor's reply brief to this Court, in closing arguments, the Commonwealth described in detail only the shots fired while Taylor was standing in the Cook Out parking lot.

sentenced Taylor according to the jury's recommendation but probated his sentence for five years. These appeals followed. Middlebrooks and Chazerae were also convicted by the jury.[6]

Both Williams and Taylor claim that the circuit court erred by failing to grant their separate motions for a directed verdict on the charges of wanton endangerment, first degree. They argue that they fired their guns into the air; therefore, the circumstances did not manifest "extreme indifference to the value of human life" as mandated for a conviction of wanton endangerment, first degree, under KRS[7] 508.060. Williams also claims that the jury should have been instructed on a local city ordinance as a lesser included offense of wanton endangerment, first degree. We disagree with each argument.

Regarding motions for a directed verdict, the Kentucky Supreme Court has ruled

> [w]hen deciding a motion for a directed verdict "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is

---

[6] Middlebrooks was convicted of one count of wanton endangerment, first degree, as well as being a persistent felony offender, first degree. He was sentenced to fifteen years' incarceration. Middlebrooks' appeal was dismissed by this Court for failure to file a timely notice of appeal. *See* No. 2019-CA-0202-MR. Chazerae was convicted of wanton murder and four counts of wanton endangerment, first degree. He received a sentence of twenty years' incarceration, which he appealed. The Kentucky Supreme Court upheld his conviction in *Taylor v. Commonwealth*, __S.W.3d__, 2020 WL 6390211.

[7] Kentucky Revised Statute.

guilty, a directed verdict should not be given."
*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Questions about the credibility and weight to be given to the evidence are reserved to the jury. *Id.* "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

*Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017).

"It should be remembered that the trial court is certainly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Sawhill*, 660 S.W.2d at 5. In other words, as long as the Commonwealth produces more than a scintilla of evidence against the defendant, a motion for directed verdict should be denied.

A person is guilty of wanton endangerment "when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060. "Wantonly" is defined in KRS 501.020(3), in relevant part, as

[a] person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

-6-

"Thus, wantonness is the awareness of *and* conscious disregard of a risk that a reasonable person in the same situation would not have disregarded." *Robertson v. Commonwealth*, 82 S.W.3d 832, 835 (Ky. 2002) (emphasis added).

Both Williams and Taylor argue that the circuit court should have granted their motions for a directed verdict because the evidence produced at trial showed only that they fired into the air, not into the crowd of people, in the Cook Out parking lot. According to them, the circumstances did not manifest extreme indifference to the value of human life. In upholding Chazerae's conviction, the Kentucky Supreme Court in *Taylor* looked to the elements of causation provided in KRS 501.060(3)-(4) which state, in relevant part

> (3) When wantonly or recklessly causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of recklessness, of which he should be aware unless:
>
> > (a) The actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or
> >
> > (b) The actual result involves the same kind of injury or harm as the probable result and occurs in a manner which the actor knows or should know is rendered

substantially more probable by his conduct.

(4) The question of whether an actor knew or should have known the result he caused was rendered substantially more probable by his conduct is an issue of fact.

*See Taylor*, __S.W.3d at __, 2020 WL 6390211 at *3.

Further, the Kentucky Supreme Court has looked to the 1974

Commentary to KRS 501.060, noting

Once an act is found to be a cause in fact of a result and a substantial factor in bringing about that result, it is recognized as the proximate cause unless another cause, independent of the first, intervenes between the first and the result. And even then the first cause is treated as the proximate cause if the harm or injury resulting from the second is deemed to have been reasonably foreseeable by the first actor.

*Robertson v. Commonwealth*, 82 S.W.3d 832, 836 (Ky. 2002); *Taylor*, __S.W.3d at __, 2020 WL 6390211 at *4.

In other words, the fact finder must look to whether Williams and Taylor knew or should have known that firing their guns in the parking lot of the Cook Out made it substantially more probable that others would return gunfire, thus putting others in the parking lot at serious physical injury and/or death. *See id.*

Because Chazerae made the same legal arguments to the Kentucky

Supreme Court that Williams and Taylor make before us, we look to our highest

Court's analysis to decide the issue:

> Case law is clear that a wide variety of actions under differing circumstances may constitute aggravated wanton conduct. In addressing the sufficiency of the evidence for wanton endangerment, this Court has held that "[f]iring a weapon in the immediate vicinity of others is the prototype of first degree wanton endangerment." *Swan v. Commonwealth,* 384 S.W.3d 77, 102 (Ky. 2012) (quoting Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 9-4(b)(2) at 388, and n.142 (1998)) (citations omitted). In *Swan*, the defendants, armed with handguns, invaded and robbed a home, firing into the ceiling, as well as toward specific victims in the living room located in the front of the home. 384 S.W.3d at 84-86. This Court concluded that a directed verdict should have been granted on first-degree wanton endangerment regarding the person who was hiding in the back bedroom of the house, as no proof was presented that the defendant shot in her direction. *Id.*

> Contrast the holding in *Swan* to *Hall*,[8] wherein we found sufficient evidence to uphold first-degree wanton endangerment convictions for children who were somewhere inside the house that the defendant shot through from across the street using a scoped .30-06 deer rifle, killing the children's parents. 468 S.W.3d at 829. We analogized those facts to *Paulley v. Commonwealth*, 323 S.W.3d 715 (Ky. 2010), in which the Court upheld the trial court's denial of a directed verdict on nine counts of wanton endangerment, one for each person present in the home at the time the defendant fired three

---

[8] *Hall v. Commonwealth*, 468 S.W.3d 814 (Ky. 2015).

shots from a shotgun into the closed doorway of the home. *Id.* at 723, 726. In affirming the denial of the directed verdict, the *Paulley* court did not consider the precise location of each of the victims inside the home, instead emphasizing that with respect to wanton endangerment, a single gunshot can endanger multiple people.

The determination of whether the defendant's conduct is "wanton" is one for the jury to make, considering the circumstances of the case. *See* KRS 507.020 Kentucky Crime Commission/LRC Commentary (1974). "Typical of conduct contemplated for inclusion in 'wanton' murder is: shooting into a crowd, an occupied building or an occupied automobile; placing a time bomb in a public place; or derailing a speeding locomotive." *Id.*

A reasonable jury could have concluded that [Williams and Taylor] wantonly fired multiple shots into the air, amidst a crowd of people during the early morning hours, which set into motion the foreseeable response gunfire that resulted in Gay's death and created a substantial danger of death or serious physical injury to the four people in her immediate vicinity. *See e.g., Phillips v. Commonwealth*, 17 S.W.3d 870 (Ky. 2000) (upholding defendant's wanton murder conviction since a jury could "reasonably conclude that a person who deemed it necessary to arm himself before going to that neighborhood [to purchase crack cocaine from a street dealer] would have been aware of the risk that others in the neighborhood . . . would also be armed, and if fired upon, would return fire[ ]"). The four people in Gay's vicinity, for whom [Williams] was convicted of first-degree wanton endangerment, all testified at trial as to their location when the bullets were fired and their

-10-

nearness to Gay when she was shot.[9] Their testimony, and all testimony presented, was for the jury to assess and weigh. *See Morgan v. Commonwealth*, 421 S.W.3d 388, 393 (Ky. 2014) ("[W]hen the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide[]" (citation omitted)).

*Taylor*, __S.W.3d at __, 2020 WL 6390211, at *4-5 (footnotes omitted).

Although Chazerae fired the initial shots into the air that night, both Williams and Taylor arrived at the Cook Out armed and looking for someone whom they believed to be armed based on Taylor's account of the robbery earlier in the evening. Although Williams later told police that he went along only to get something to eat, it was the jury's province to believe or disbelieve that evidence. The parking lot was crowded, as it was known to be. While Williams and Taylor shot into the air, they "knew the crowd would panic and disperse, and [they] counted on it. Forensic evidence showed that multiple people returned fire, a testament to the likelihood that a dangerous reaction to [their] provocation might occur. When bullets start flying in a crowd of people, no one should be surprised when someone gets shot." *Id.* at *5.

The evidence was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that Williams and Taylor were guilty. Accordingly, the

---

[9] Williams was convicted of five counts of wanton endangerment, first degree, related to Trinity Gay and the four individuals in her vicinity when she was shot. Taylor was convicted of one count of wanton endangerment unrelated to any specific individual in the Cook Out parking lot.

circuit court did not err in denying Williams' and Taylor's motions for a directed verdict.

We are also unpersuaded that Williams was entitled to a jury instruction based on violation of a local city ordinance. The jury was instructed on first-degree wanton endangerment and second-degree wanton endangerment as a lesser included offense. Williams has failed to demonstrate that violation of the local ordinance is a lesser included offense of wanton endangerment, first degree, or that such an instruction by the circuit court would have been proper under any circumstance. "The fact that evidence at trial could support a guilty verdict on an uncharged offense that is less serious in nature or less difficult to prove than a charged offense does not establish that the former is a lesser offense which is necessarily included in the latter." *Hart v. Commonwealth*, 768 S.W.2d 552, 553 (Ky. App. 1989). Therefore, we discern no error.

Accordingly, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT
LAMONTE AKIO WILLIAMS:

Abe Mashni
Lexington, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky


BRIEFS FOR APPELLANT
D'MARKEO CHAVEZ
TAYLOR:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James C. Shackelford
Assistant Attorney General
Frankfort, Kentucky