RENDERED: FEBRUARY 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0060-MR

ALBERT DIXON                                         APPELLANT

v.            APPEAL FROM MADISON CIRCUIT COURT
HONORABLE KRISTIN CLOUSE, JUDGE
ACTION NO. 22-CI-00167

EXECUTIVE BRANCH
ETHICS COMMISSION                                 APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE: Albert Dixon ("Dixon") appeals a Madison Circuit Court order upholding a decision by the Kentucky Executive Branch Ethics Commission ("Commission") that found Dixon violated Kentucky Revised Statute ("KRS") Chapter 11A, the Executive Branch Code of Ethics ("Ethics Code"). After review, we vacate the circuit court's order and remand to the Commission with directions to dismiss the charges against Dixon.

## KRS 11A.020(1)(d)

No public servant,[1] by himself or through others, shall knowingly . . . (d) Use or attempt to use his official position to secure or create privileges, exemptions, advantages, or treatment for himself or others in derogation of the public interest at large.

## BACKGROUND

Dixon was a Training Section Supervisor for the Commonwealth of Kentucky Department of Criminal Justice Training ("DOCJT"), Justice and Public Safety Cabinet. Prior to his employment with DOCJT, Dixon owned a car lot. While employed by DOCJT – with the cooperation of local car dealerships – Dixon drove for-sale vehicles to work and parked them in his permitted DOCJT parking spot. During his breaks and after work, he let coworkers test drive the vehicles and connected buyers with local dealers. Dixon received a fee from the dealerships each time someone he referred purchased a vehicle, and some of the purchasers would also pay Dixon for his time and connection. As a result of his vehicle activity, Dixon earned approximately $7,000 in 2017 and $8,000 in 2018.

In November 2018, the Commission initiated a preliminary investigation into Dixon. The Commission's investigator found probable cause to believe Dixon's vehicle activity was a conflict of interest, an improper use of his position, and a violation of the Ethics Code. As a result, in June 2021, the

---

[1] Dixon does not contest his status as a public servant as defined by KRS 11A.010(9).

Commission held a 2-day administrative hearing with 18 witnesses, including Dixon and 15 other employees of DOCJT.

In January 2022, the Commission's hearing officer entered her findings of fact, conclusions of law, and recommended order ("Recommended Order"). In this Recommended Order, the hearing officer found that there was no evidence Dixon participated in test drives while on state time, and no evidence Dixon had vehicle-related discussions with coworkers "to any substantial extent" on state time or on state-owned computers or cell phones. The Recommended Order stated that most of Dixon's vehicle conversations occurred off state time, after work, or during breaks. Also, the Recommended Order stated that no one testified that Dixon's vehicle activity conflicted with his DOCJT work or affected his relationships with coworkers. All four of Dixon's supervisors who testified stated that they did not believe Dixon acted wrongfully, and the vehicle activity did not interfere with his work. The hearing officer concluded that Dixon did not violate KRS 11A.020(2) or KRS 11A.020(1)(a).

However, the Recommended Order stated that Dixon did improperly create an "advantage" for himself (and other DOCJT employees) by using his state-owned parking space for his own personal gain. As such, the hearing officer concluded that by bringing the cars to the DOCJT, and creating that advantage, there was clear and convincing evidence that Dixon violated KRS 11A.020(1)(d).

The hearing officer recommended only a total fine of $300. Both parties filed exceptions to the Recommended Order.

In March 2022, the Commission ("First Commission Order") adopted much of the Recommended Order and agreed with the hearing officer that Dixon did not violate KRS 11A.020(1)(a) or KRS 11A.020(2), but that he did violate KRS 11A.020(1)(d). Relevantly, the Commission – relying on *Flint v. Executive Branch Ethics Commission*, 981 S.W.2d 132 (Ky. App. 1998) – implied that Dixon *should have known* his actions were a violation but it did not directly make a finding that Dixon *knowingly* violated the Ethics Code. The Commission did not accept the hearing officer's penalty recommendations, and instead imposed a total penalty of $2,000. Dixon appealed to the Madison Circuit Court.

In March 2023, the Madison Circuit Court entered its first order ("First Circuit Order") that determined a KRS 11A.020(1)(d) violation required a finding that Dixon knowingly committed the ethical violation. In fact, the court explicitly stated, "Dixon must have knowingly committed the ethical violation alleged by the Commission." Again, the court stated, "KRS 11A.020 requires that the Commission find by clear and convincing evidence that Mr. Dixon knowingly violated KRS 11A.020[(1)](d)." The court pointed out that the evidence Dixon attended ethics training four times was the only evidence that he acted knowingly. The court also noted that none of Dixon's superiors, "who presumably attended the

same if not more thorough [ethics] training," believed Dixon was violating the Ethics Code. The court agreed with the Commission that "just because Mr. Dixon's superiors did not think his behavior was unethical does not mean it was not a violation . . . ." However, the circuit court believed the superiors' lack of knowledge could give weight to Dixon's argument that he did not knowingly violate the code. Also, the court disagreed with the Commission's reliance on *Flint* because: 1) the Commission improperly used *Flint* to negate the statutory requirement of "knowingly" but the explicit, clear element must have meaning within the statute; and 2) *Flint* refers to an "entirely different statute" (KRS 11A.040(7)) that does not require any *mens rea*.[2] The court stated that the Commission's reliance on what Dixon *should have known* "in the face of clear evidence to the contrary is legally in error and deficient as a [matter] of law." As such, the court found that the First Commission Order was "devoid of sufficient fact finding regarding evidence that Mr. Dixon knew his behavior was in violation of the ethical code[,]" and remanded to the Commission "in order to make findings of fact in relation to any evidence of knowledge." Neither Dixon nor the Commission appealed this First Circuit Order.

_____

[2] *Mens rea* refers to an actor's state of mind, *i.e.*, what he/she knew or should have known with respect to the probable consequences of his/her conduct. *See Robertson v. Commonwealth*, 82 S.W.3d 832, 835-36 (Ky. 2002).

Upon remand, the Commission did not take additional evidence, did not utilize the circuit court's directives per "knowingly," nor accept the circuit court's interpretation of *Flint*. Instead, in July 2023, the Commission entered a second order ("Second Commission Order") that repeated much of its first order, adding law *and* fact-finding specific to its version of "knowingly." The Second Commission Order stated that KRS 11A.020(1)(d) does *not* require the Commission to establish Dixon knowingly *violated the Ethics Code*, but rather that Dixon knowingly *used his position for personal gain*. With that legal interpretation, the Commission found Dixon violated KRS 11A.020(1)(d) as there was clear evidence he knowingly used the DOCJT parking lot for personal gain. Again, the Commission seemed to admit that Dixon did not have *actual* knowledge of the impropriety of his actions, but instead found that based on circumstantial evidence he should have known his actions were in violation of the Ethics Code. Again, Dixon appealed to the Madison Circuit Court.

On his *second* appeal to the circuit court, Dixon challenged the Second Commission Order legally and procedurally. Dixon argued that the Commission did not appeal the First Circuit Order and was thereby bound by it. He argued that despite the finality of the court's previous order, the Commission did not incorporate the court's legal conclusions in the Second Commission Order and was, in fact, in direct contravention of the law of the case. Dixon argued that

the First Circuit Order established that the Commission needed to prove Dixon knowingly violated the Ethics Code, but in the Second Commission Order it again failed to meet that requirement and instead redefined "knowingly" to fit the facts already in existence. Dixon also challenged the Commission procedurally; he argued the Commission improperly made additional factual findings without taking additional evidence.

The circuit court disagreed with Dixon and affirmed the Second Commission Order ("Second Circuit Order"). The Second Circuit Order found that the Commission acted within its authority to modify and/or make additional findings based on the existing record because it was not required to take additional evidence if further analysis of the *existing* record was sufficient to meet the legal requirements. However, on this subsequent review, the circuit court also adopted the Commission's interpretation of "knowingly" and accepted that the Commission now sufficiently proved Dixon knowingly used his parking permit for his own financial gain in violation of KRS 11A.020(1)(d). Dixon sought discretionary review by this Court.

## ANALYSIS

> Generally, "our review of the decision of an administrative agency is highly deferential, and we reverse only if the decision was arbitrary, unsupported by substantial evidence, or otherwise erroneous as a matter of law." *Jefferson Cnty. Sheriff's Off. v. Kentucky Ret. Sys.*, 626 S.W.3d 554, 558 (Ky. 2021) (citations omitted).

> "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018) (citation omitted). However, we review questions of law de novo, including the application and interpretation of statutes. *Jefferson Cnty. Sheriff's Off.*, 626 S.W.3d at 558 (citation omitted).

*River City Fraternal Order of Police Lodge No. 614, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 664 S.W.3d 486, 493 (Ky. 2022).

Under these circumstances, our review will not build substantive caselaw regarding KRS 11A.020(1)(d). While we must discuss the development of the "knowingly" element within KRS 11A.020(1), we are *not* defining or accepting any particular definition of "knowingly." Here, we simply hold that the "law of the case" doctrine mandates reversal.

"The law of the case doctrine is an iron rule . . . predicated upon the principle of finality." *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 244 S.W.3d 747, 751 (Ky. App. 2007) (citing *Union Light, Heat & Power Co. v. Blackwell's Adm'r,* 291 S.W.2d 539, 542 (Ky. 1956)) (internal quotation marks omitted). It is the principle that "when a point or question arising in the course of a lawsuit has been finally decided, the legal rule or principle announced as applicable to the facts governs the lawsuit in all its later stages and developments." *Law of the Case*, BLACK'S LAW DICTIONARY (12th ed. 2024). Stated another way, "an opinion or decision of an appellate court in the same cause is the law of the

-8-

case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Brooks*, 244 S.W.3d at 751 (quoting *Union Light, Heat & Power Co.*, 291 S.W.2d at 542). This doctrine ensures consistency and finality. "[I]t would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation." *Id.* (quoting *Union Light, Heat & Power Co.*, 291 S.W.2d at 542). We must apply this principle to the matter before us.

The First Commission Order concluded that: 1) Dixon's supervisors' knowledge or acceptance of his actions did not negate his accountability for the violation; 2) Dixon attended four ethics training sessions and *should have known* his actions were a violation of the Ethics Code; and 3) citing to *Flint*, Dixon had the responsibility to know the effect of his actions. Dixon disagreed with this decision and appealed to the circuit court.

Next, the circuit court addressed Dixon's arguments and agreed with him, in large part, in its March 2023 Order ("First Circuit Order"). In the First Circuit Order, the court: 1) agreed with the Commission that Dixon's supervisors' knowledge did not negate his own accountability, but asserted the supervisors' beliefs (that he was not doing anything improper) supported Dixon's lack-of-knowledge claim; 2) found that attending ethics classes *alone* was not sufficient to

legally establish that Dixon acted knowingly; and, 3) disagreed with the Commission's reliance on *Flint* because the Commission improperly used the case to negate the required "knowingly" component of the statute and *Flint* was factually distinguishable.  On remand, the court clearly interpreted the "knowingly" element as *knowingly committing an ethical violation* and instructed the Commission to make additional findings regarding evidence of actual knowledge.

If the Commission did not agree with the circuit court's legal conclusions, proper procedure would have been to file a motion to alter, amend, or vacate and/or appeal to this Court.  *See* Kentucky Rule of Civil Procedure 59.05; *see also* KRS 13B.160; *500 Associates, Inc., v. Natural Res. & Env't. Protection Cabinet*, 204 S.W.3d 121, 130-31 (Ky. App. 2006).  Here, neither Dixon nor the Commission filed such a motion nor requested further review by this Court.

After the First Commission Order, the Commission made legal arguments before the circuit court – the circuit court was acting as an *appellate* court – and the circuit court rejected the Commission's assertions.  "[A] party who is aggrieved by an adverse appellate determination must appeal at the time the decision is rendered . . . ."  *Whittaker v. Morgan*, 52 S.W.3d 567, 569 (Ky. 2001).  In essence, the circuit court's rejections and correlating legal conclusions in the First Circuit Order became final when not challenged by a CR 59.05 motion or

-10-

appeal. The First Circuit Order was final because that order remanded the matter back to the Commission with multiple distinct directives; namely, caselaw interpretation (*Flint*), a "knowingly" definition, and the sufficiency of that definition. *See id.* (holding that a Workers' Compensation Board order containing multiple distinct directives should be analyzed for finality under the law of the case doctrine); *see also Hall v. BPM Lumber, LLC*, No. 2023-SC-0332-WC, 2024 WL 5174554, *7 (Ky. Dec. 19, 2024) (unpublished[3] but reaffirming and applying *Morgan*, *supra*). If an aggrieved party does not appeal at the time the decision is rendered, "objection on remand is futile[.]" *Morgan*, 52 S.W.3d at 569 (citing *Williamson v. Commonwealth*, 767 S.W.2d 323, 325 (Ky. 1989)). The Commission's attempt to later change the court's definition of knowingly or its *Flint* interpretation amounts to improper relitigation.

> [A] party who is aggrieved by an adverse appellate determination must appeal at the time the decision is rendered because an objection on remand is futile, and an appeal from the implementation of the appellate decision on remand amounts to an attempt to relitigate a previously-decided issue.

*Morgan*, 52 S.W.3d at 569 (citing *Williamson v. Commonwealth*, 767 S.W.2d at 325; and *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982)). Hence, the First Circuit Order became the law of the case. This holds true however erroneous the

---

[3] This case is unpublished, non-binding, and merely persuasive. Rule of Appellate Procedure 41.

opinion or decisions may have been. *Brooks*, 244 S.W.3d at 751 (quoting *Union Light, Heat & Power Co*., 291 S.W.2d at 542).

On remand – despite the binding nature of the First Circuit Order – the Second Commission Order did not adhere to the circuit court's conclusions.[4] The Second Commission Order repeated many of the legal arguments it previously made, *and the circuit court previously rejected*. Relevantly, the First Circuit Order gave three clear directives – caselaw interpretation of *Flint*, a "knowingly" definition, and findings on establishing that definition – but the Second Commission Order did not utilize those directives.

The First Circuit Order limited *Flint's* application and overtly stated it disagreed with the Commission's reliance on that case. In *Flint*, a former employee of the executive branch registered as a lobbyist three days after he resigned from his position within the Department for Employment Services Workforce Development Cabinet. 981 S.W.2d at 133. The Commission found that – as KRS 11A.040(7) requires a one-year waiting period between leaving office and working as a lobbyist – the former employee violated the Ethics Code. *Id*. On appeal, the circuit court affirmed the Commission's decision, and this Court affirmed the circuit court. 981 S.W.2d at 133-34. In pertinent part, the

_____

[4] The Commission did not take additional evidence after remand, but it was not required to do so. *See Wilson v. Askew*, 568 S.W.3d 375, 380 (Ky. App. 2019) (citations omitted).

-12-

employee argued that he was not aware his actions were an ethical violation, but the *Flint* Court stated that the statute did not require the offender to act "knowingly" and thus, a person's impression that conduct is legal does not negate his culpability. *Id*.

Here, the First Circuit Order agreed with the Commission that – applying *Flint* – the fact that Dixon's supervisors did not know his actions were a violation did not negate his culpability. Yet, that was where the First Circuit Order ended *Flint*'s application. The circuit court pointed out that the statute in question in *Flint* (KRS 11A.040(7)) was a different statute than that in question with Dixon (KRS 11A.020(1)(d)), and the *Flint* statute did not contain a "knowingly" component. Hence, the court determined that *Flint* should not be interpreted as negating the express "knowingly" element in KRS 11A.020.

Disregarding that conclusion, the Second Commission Order – citing *Flint* – asserted that Dixon *should have known* his actions were a violation because, "[i]t is well established that all persons are charged with knowledge of the law pertaining to their conduct." This application of *Flint* (and the implication that proving what Dixon *should have known* satisfies the statutory requirement) was in contravention of the First Circuit Order and the court's instructions on knowingly.

The First Circuit Order clearly stated that the specific statutory violation requires the Commission to establish Dixon knowingly *committed the*

-13-

*ethical violation.*  Right or wrong, this was the law of the case, and the Commission was bound by the finding that "knowingly" applied to knowledge of the violation, *not* knowledge that he benefited from his position.  Again, disregarding the court's holding, the Second Commission Order stated "[t]he statute does not require Mr. Dixon to know he was violating the [E]thics [C]ode; rather, . . . he must know he was using his position for personal gain."  The Commission was not at liberty to redefine knowingly at this stage of the process.  Again, the Commission made a legal interpretation in direct contradiction of the binding First Circuit Order.  Then, these prohibited legal conclusions evolved into misguided factual findings.

The circuit court had instructed the Commission to establish facts regarding actual knowledge, yet the additional "facts" in the Second Commission Order do not match the court's directions.  The Second Commission Order instead built a factual argument upon *its* legal interpretations; *i.e.*, facts showing Dixon knowingly *acted for personal gain* and *should have known* his actions were a violation of the code.  The Commission argued the requisite knowledge should be "imputed" on Dixon through *circumstantial* evidence:  1) "[e]mployee complaints regarding Mr. Dixon's conduct were not acted upon by supervisors"; 2) DOCJT parking permits were issued on a limited basis and linked to one license plate each; 3) "DOCJT did not formally approve or sanction Mr. Dixon's unethical use of state

-14-

resources"; 4) the fact that Dixon only showed the vehicles while *not* on state time somehow proves knowledge that showing the vehicles at all was inappropriate; 5) DOCJT required Dixon to report outside employment to the DOCJT and he was aware of that rule because he previously filed such paperwork for his real estate business, but not for his vehicle activity. Again, none of these "facts" shows *actual knowledge* of an ethical violation. The Commission's "facts": a) *circumstantially* show Dixon *should have known* his actions were a violation and/or; b) imply it was reasonable for the Commission to disagree with his actions and/or; c) show Dixon had knowledge that he was using his parking permit for personal gain.

With these improper legal conclusions and the correlating circumstantial factual support, the Commission again found Dixon in violation of the Ethics Code. Dixon appealed to the circuit court for a second time. *Unfortunately* for Dixon, the circuit court agreed with the Commission this time. *Fortunately* for Dixon, the circuit court was not permitted by law to do so. *See Brooks*, 244 S.W.3d at 750-51.

This time around, the Second Circuit Order accepted the Commission's legal definition of knowingly and agreed that the Commission needed only to show Dixon knowingly used his position for personal gain, not that he knowingly violated the Ethics Code. The circuit court also found that the

-15-

Commission now had supplied "ample" additional factual evidence to support this new legal standard. Thus, the Second Circuit Order affirmed the Commission and its conclusion that Dixon violated the Ethics Code. This was clearly erroneous.

On review, it is not our role to challenge the facts established by the Commission. KRS 13B.150(2). We accept the facts as found by the Commission, but we must determine if the findings of fact made by the Commission are supported by substantial evidence. *See River City Fraternal Ord. of Police Lodge No. 614, Inc.*, 664 S.W.3d at 493. Given the binding nature of the First Circuit Order, they are not. The First Circuit Order directed the Commission to locate, if any existed, facts showing Dixon knowingly violated the Ethics Code. The Commission did not locate such facts. The Commission recited facts that show Dixon *should have* known he violated the Ethics Code and knowingly used his personal position for financial gain, but those were not the facts requested nor the facts required by the law of the case. The Commission's only argument that Dixon "knew" he violated the code was his attendance at ethics training. However, right or wrong, the law of the case states that ethics training alone is not sufficient to meet the required element. Without such evidence, the finding fails for lack of support. Thus, the Commission's finding that Dixon knowingly violated the Ethics Code is not supported by substantial evidence.

Again, "if an appellate court has . . . remanded the [case] to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Inman*, 648 S.W.2d at 849 (citation omitted). The law of the case dictated that "knowingly" related to knowingly violating the Ethics Code, not knowingly using his position for personal gain. The circuit court erroneously changed its original findings, and such a change was precluded by the finality of the First Circuit Order and the law of the case doctrine. Thus, the circuit court erred as a matter of law and erred in affirming the Second Commission Order as that order was not supported by substantial evidence.

## CONCLUSION

Therefore, we VACATE the Second Circuit Order and REMAND the matter to the Commission with instructions to dismiss the charges against Dixon.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Albert F. Grasch, Jr.
Lexington, Kentucky

BRIEF FOR APPELLEE:

Meena Mohanty
Frankfort, Kentucky